

# NUMBER 13-21-00067-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

KENNETH L. BERRY,                                                    Appellant,

v.

BAY, LTD.,                                                           Appellee.

**On appeal from the 343rd District Court
of San Patricio County, Texas.**

# OPINION

**Before Justices Hinojosa, Tijerina, and Silva
Opinion by Justice Silva**

Appellant Kenneth L. Berry appeals the amount of attorneys' fees and sanctions awarded to him adjudged against appellee Bay, Ltd. (Bay). By two issues, Berry argues that the trial court abused its discretion by: (1) issuing an arbitrary and unreasonable attorneys' fees award; and (2) ordering insufficient sanctions against Bay. We affirm in part and reverse and remand in part.

## I.    BACKGROUND

This case is before this Court for a second time since its inception. *See Berry v. Bay, Ltd.*, No. 13-18-00438-CV, 2020 WL 486486, at *1 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, no pet.) (mem. op.) (*Berry I*). Because Berry and Bay both refer to filings in the record in the previous appeal, we take judicial notice of the clerk's record therein. A brief review of the relevant history will provide the necessary context for the issues before us in the current appeal.

### A.    Initial Appeal

On March 5, 2018, Bay filed suit against Berry for defamation, alleging that Berry falsely and anonymously reported to the Texas Commission on Environmental Quality (TCEQ) that Bay improperly buried a barge on its property.[1] *Id.* Berry answered asserting multiple affirmative defenses, including the defense of limitations. *Id.* Shortly thereafter, Berry filed a motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA), which was overruled by operation of law after thirty days. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011; *Berry I*, 2020 WL 486486, at *1. Berry appealed to this Court. *Berry I*, 2020 WL 486486, at *1.

On appeal, we concluded that Bay's suit fell under the TCPA because Berry's statements to TCEQ were an exercise of his First Amendment rights. *Id.* at *3; *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.002, 27.005(b)(1)(A). We further concluded that Bay's claims should have been dismissed because they were barred by limitations. *Berry I*,

---

[1] Although Berry anonymously made his report to TCEQ in July 2015, Bay learned about the report in 2017 while deposing Berry for an unrelated lawsuit. *Berry v. Bay, Ltd.*, No. 13-18-00438-CV, 2020 WL 486486, at *1 (Tex. App.—Corpus Christi–Edinburg Jan. 30, 2020, no pet.) (mem. op.).

2

2020 WL 486486, at *4. Because the matter of limitations was dispositive to the case, we did not address Berry's remaining affirmative defenses. *Id.* Therefore, we reversed the trial court's order denying Berry's motion to dismiss, and we remanded the case to the trial court for further proceedings consistent with our memorandum opinion. *Id.*

**B.      Berry's Post-Appeal Motion**

On remand, Berry filed a motion to enter an order of dismissal and a motion for attorneys' fees, costs, expenses, and sanctions under the TCPA. As it related to attorneys' fees, Berry requested a total of $79,712.50 "for the pre-appeal trial stage, incurred appellate attorney's fees, and post-appeal trial stage." According to Berry's motion, the rates charged by his counsel ranged from $225 per hour to $325 per hour for attorneys and $150 per hour for paralegals. The motion specified that Berry's counsel dedicated 259.4 total hours for his defense and included a stage-based itemization: 108.2 hours for the pre-appeal trial stage, 117 hours for the interlocutory appeal stage, and 42.9 hours for the post-appeal trial stage.[2] Berry's counsel "further anticipate[d] spending an additional [fifteen] hours analyzing any response(s) filed, drafting any objections to any evidence submitted with any such response(s), drafting a reply to any such response(s), and preparing for and attending the hearing on the Motion to Enter."

Berry requested $20,400 for conditional appellate attorneys' fees for an appeal to this Court and an additional $10,200 contingent on oral argument. If the appeal reached the Texas Supreme Court, Berry requested $23,800 through the petition for review stage,

---

[2] Although Berry's counsel identified a total of 259.4 hours, the sum of each stage as presented in Berry's motion is 268.1.

$27,200 for briefing on the merits, and $13,600 if the Texas Supreme Court granted oral argument.

Berry included five exhibits to his motion, consisting of (1) Bay's original petition and attached exhibits; (2) our memorandum opinion and judgment from *Berry I*; (3) our mandate from *Berry I*; (4) the bill of costs from *Berry I*; and (5) a declaration from his counsel with relevant attachments including a chart of descriptions of the work completed, the time to complete each task, the individual who completed each task, and the hourly rate charged for each task. The breakdown of work completed is further itemized into each stage of the suit comporting with Berry's requests for attorneys' fees. Small portions of the chart are redacted.

The attorney's declaration outlined the education and qualifications of each attorney and paralegal who provided services to Berry. Berry's counsel declared that, for each stage of the suit, "[a] reasonable number of hours were expended," and the fees charged were "reasonable and necessary under Texas law." Specifically, he declared that "[t]he rates charged . . . [were] reasonable given the experience, reputation, and ability of the lawyers and paralegals and comparable to rates charged by attorneys practicing in [the area]."

Berry requested that the trial court award him court costs, including court reporter fees, and "other expenses" such as "copies, Westlaw fees, and miscellaneous expenses that were incurred in defending against Bay's lawsuit." According to Berry and the documents attached to his motion, Berry's court costs were $349.85 and $1,670 for appellate court costs. Berry's "other expenses" totaled $6,365.44.

4

Finally, Berry requested that, when determining the amount for the mandatory sanction, the trial court consider that Bay filed its suit in retaliation to other suits between Berry and Bay and to stifle Berry's constitutional rights. Although Berry's motion did not specify the amount of sanction he requested, in a subsequent response Berry asked the trial court to use the fees and costs Berry incurred as a guidepost and assess $79,712.50 as a sanction.

## C.    Bay's Response

In response to Berry's motion, Bay claimed that Berry's requests for attorneys' fees was "'excessive' and 'extreme' in light of the amount in controversy raised by [its] pleadings and evidence." Bay argued that it only sought $128,000[3] in damages and awarding two-thirds of its requested damages as attorneys' fees would not be "moderate or fair." Bay argued, in part, that our memorandum opinion in *Berry I* only considered Berry's limitations defense and did not consider his merits-based defense, "so his 'relative success' on appeal was low." Thus, Bay asked the trial court to "strike any time spent by Berry's attorneys on the substantive defamation arguments."

Additionally, Bay asserted that, in the alternative, Berry was required to segregate between recoverable and unrecoverable fees. According to Bay, Berry's counsel should have segregated the fees between the limitations-based defense and the merits-based

---

[3] We note that Bay's original petition sought "actual damages in the form of out-of-pocket expenses to refute [Berry's] claims" which were "well over $150,000" and sought the maximum exemplary damages allowed. After Berry filed his motion to dismiss, Bay amended its petition to claim $129,247.43 in actual damages for defending against Berry's claim. Although Bay's amended petition claimed it suffered $150,000 in damages in the form of loss of reputation and good standing, it did not specify whether it sought recovery for that amount as well. Rather, the amended petition only stated that "[Bay] pleads for nominal damages."

defense.

Bay acknowledged that under the applicable version of the TCPA, sanctions were mandatory if a party prevailed under a TCPA motion to dismiss. However, it argued that only nominal sanctions were appropriate because "deterrence is the only legitimate purpose of a TCPA sanction." Bay noted that "no court has passed judgment on the arguments made or evidence produced by Berry and Bay as to the [merits of the] defamation suit" because the matter was resolved on limitations. Although Berry alleged that Bay's suit was brought in retaliation to a previous suit between Berry and Bay, Bay responded that the only evidence of alleged retaliation was timing which should be insufficient.

## D.    Trial Court's Ruling

After a hearing on January 26, 2021, the trial court took the parties' arguments and evidence under advisement. On February 11, the trial court issued an order dismissing Bay's suit with prejudice and awarded Berry $17,000 in actual attorneys' fees,[4] up to $17,500 for conditional appellate attorneys' fees, all court costs, and $2,160.09 for other expenses. Bay was assessed $2,000 as a sanction, which the trial court found "constitute[d] an amount sufficient to deter Bay from bringing similar actions in the future." This appeal followed.

## II.    STANDARD OF REVIEW

A trial court's determination of reasonable attorneys' fees under the TCPA is

---

[4] The trial court awarded fees for each stage of litigation as follows: (1) $10,000 for the pre-appeal stage; (2) $5,000 for the interlocutory appeal stage; and (3) $2,000 for the post-appeal stage.

"within the court's sound discretion" and will be reviewed under the abuse of discretion standard. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016); *see also McIntyre v. Castro*, No. 13-17-00565-CV, 2018 WL 6175858, at *6 (Tex. App.—Corpus Christi–Edinburg Sept. 6, 2018, pet. denied) (mem. op.). The trial court also has discretion to determine whether an award for "other expenses incurred in defending against the action is equitable and just." *Avila v. Larrea*, 506 S.W.3d 490, 496 (Tex. App.—Dallas 2015, pet. denied). The trial court's assessment of appropriate sanctions is also reviewed under an abuse of discretion standard. *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 717 (Tex. App.—Amarillo 2018, pet. denied).

"A trial court abuses its discretion when a 'decision is arbitrary, unreasonable, and without reference to guiding principles.'" *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019) (quoting *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996)). "When a trial court does not issue findings of fact or conclusions of law, as in this case, 'all facts necessary to support the judgment and supported by the evidence are implied.'" *Gray, Ritter & Graham, PC v. Goldman Phipps PLLC*, 511 S.W.3d 639, 653 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied) (quoting *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)); *see also Sprute v. Levey*, No. 04-14-00358-CV, 2015 WL 4638298, at *7 (Tex. App.—San Antonio July 15, 2015, no pet.) (mem. op.) (holding that where the trial court did not expressly state its reason for a reduced fee, "we must infer that the trial court found 'some of the claimed fees to be unreasonable, unwarranted, or some other circumstances which [made] an award of the uncontroverted claim wrong'" (quoting *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882

7

(Tex. 1990) (per curiam))). "When reviewing matters reserved for the trial court's discretion, a court of appeals may not substitute its own judgment for that of the trial court." *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 767 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing *Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989)).

### III.    APPLICABLE LAW

## A.    Attorneys' Fees

The controlling version of the TCPA required the trial court to award "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action" for a party who successfully achieves a dismissal under the TCPA. Acts of June 17, 2011, 82nd Leg., R.S., Ch. 341, § 2, sec. 27.009(a)(1), 2011 Tex. Sess. Law. Serv. Ch. 341 (H.B. 2973) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(1)).[5] "A 'reasonable' attorney's fee 'is one that is not excessive or extreme, but rather moderate or fair.'" *Sullivan*, 488 S.W.3d at 299 (quoting *Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010)). "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). Whether a fee is reasonable or necessary are "questions of fact to be determined by the fact finder," and each "act[s] as [a] limit[] on the amount of fees that a prevailing party can shift to the non-prevailing party." *Id*.

---

[5] After the initial citation, we will refer to each statute by the code and section number rather than legislative act for clarity.

The Texas Supreme Court has adopted the lodestar method for determining reasonable attorney's fees. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012).

> Under the lodestar method, the determination of what constitutes a reasonable attorney's fee involves two steps. First, the court must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work. The court then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar. The court may then adjust the base lodestar up or down (apply a multiplier), if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case.

*Id.* (citations omitted). Relevant factors to consider for a reasonable time and rate are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Rohrmoos Venture*, 578 S.W.3d at 493–94 (quoting *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)). Although contemporaneous billing records are not required to prove that the requested fees are reasonable and necessary, they are strongly encouraged. *Id.* at 502.

"Therefore, the base lodestar calculation should reflect hours reasonably expended for services necessary to the litigation." *Id.* at 498 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Likewise, the base calculation should reflect a reasonable hourly rate for the attorney to prosecute or defend successfully against the claim at issue."

9

*Id.* at 499. When supported by sufficient evidence, there is a presumption that the base lodestar calculation reflects the reasonable and necessary attorney's fees. *Id.* "[I]f a fee opponent seeks a reduction [from the base lodestar], it bears the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure." *Id.* at 501. Most of the *Arthur Andersen* factors are subsumed into the initial lodestar calculation and should not be used a basis for upward or downward adjustment. *Id.* at 500 (citing *Arthur Andersen*, 945 S.W.2d at 818).

Where, as here, trial attorney's fees are statutorily mandated, so too are appellate fees mandatory when proof of reasonable fees is presented. *Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015). "An appellate court has the authority in looking at the entire record to draw on the common knowledge of the justices of the court and their legal experience and to view the issue in light of the experience and the amount in controversy." *Keith v. Keith*, 221 S.W.3d 156, 169 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

**B.    Sanctions**

Like attorney's fees, the then-controlling version of the TCPA required sanctions be assessed against a party whose suit was dismissed under the TCPA. Acts of June 17, 2011, 82nd Leg., R.S., Ch. 341, § 2, sec. 27.009(a)(2), 2011 Tex. Sess. Law. Serv. Ch. 341 (H.B. 2973) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2)). The sanctions should be "sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." *Id*.; *Pisharodi v. Colum. Valley Healthcare Sys., L.P.*, 622 S.W.3d 74, 90 (Tex. App.—Corpus Christi–Edinburg 2020, no pet.). "A trial court abuses its discretion if the sanctions awarded are greater than

10

necessary to promote compliance." *Landry's, Inc. v. Animal Legal Def. Fund*, 566 S.W.3d 41, 70 (Tex. App.—Houston [14th Dist.] 2018), *aff'd in part, rev'd in part on other grounds*, 631 S.W.3d 40 (Tex. 2021).

## IV.    ANALYSIS

### A.    Attorneys' Fees

By his first issue, Berry argues the trial court abused its discretion by ordering arbitrarily or unreasonably low attorneys' fees in light of the evidence he presented. Berry addresses the fees awarded by each stage of the litigation, and we will do the same.

Berry argues that because Bay did not offer counter evidence to the attorney's declaration and billing records, his evidence must be taken as true as a matter of law. *See Ragsdale*, 801 S.W.2d at 882 (providing that "where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law"). However, in *Ragsdale*, the supreme court explicitly held that "[it did] not mean to imply that in every case when uncontradicted testimony is offered it mandates an award of the amount claimed." *Id.* Under Berry's argument, the trial court would not have had discretion to consider the records provided by Berry and arguments made by Bay to determine whether the fees were reasonable and free from excess. *See Sullivan*, 488 S.W.3d at 299.

Berry further argues that the trial court could not provide a downward adjustment from his lodestar calculation because such burden to provide evidence supporting a

11

downward adjustment rested on Bay, who provided no evidence. But case law indicates *the trial court's* calculation of the *base* lodestar is presumed reasonable, not the movant's evidence of fees. *See Rohrmoos Venture*, 578 S.W.3d at 499. The Texas Supreme Court made clear: "*the court* must determine the reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *El Apple*, 370 S.W.3d at 760 (Emphasis added). After doing so, "*[t]he court* then multiplies the number of such hours by the applicable rate, the product of which is the base fee or lodestar." *Id.* (Emphasis added). Further, the supreme court has noted that "[a] meaningful review of the hours claimed is particularly important because the usual incentive to charge only reasonable attorney's fees is absent when fees are paid by the opposing party." *Id.* at 762.

Most of the *Arthur Andersen* factors play into the trial court's determination of reasonable hours spent and a reasonable rate, not a downward or upward adjustment. *See Rohrmoos Venture*, 578 S.W.3d at 500. As such, the trial court may necessarily consider the *Arthur Andersen* factors to calculate the reasonable hours expended and reasonable rate. *See id.* (citing *Arthur Andersen*, 945 S.W.2d at 818). Thus, without specific findings of fact, we must assume the trial court considered the factors to calculate the base lodestar calculation. *See Gray*, 511 S.W.3d at 653; *Rohrmoos Venture*, 578 S.W.3d at 500; *see also Sprute*, 2015 WL 4638298, at *7.

### 1.    Pre-Appeal Stage

According to the evidence, Berry's counsel spent 18.3 hours on research and analysis, 12.4 hours on the answer and motion to transfer venue, 75.6 hours on the motion to dismiss, 1.5 hours for internal communications, and 0.4 hours for client

12

communication during the pre-appeal stage of litigation. The billing records show a total of 108.2 hours for $27,816.50. Berry contends that the trial court could only arrive at the attorneys' fee award of $10,000 by two possible mathematical equations: (1) either the trial court accepted his blended hourly rate of $257.08 as reasonable and only found 38.9 hours of work as reasonable, or (2) that the trial court accepted 108.2 hours of work as reasonable and found $92.42 to be a reasonable rate. However, these are not the only mathematically possible equations to reach an award of $10,000. For example, the trial court could have concluded that an hourly rate of $200 was reasonable and fifty hours was a reasonable amount of time spent.

A review of the billing records Berry provided will assist in our review of the trial court's decision. For example, on March 21, 2018, an attorney billed 2.5 hours to "[d]raft [m]otion to [t]ransfer [v]enue and [o]riginal [a]nswer" and on March 23, 2019, another attorney billed 2.5 hours to "[d]raft [m]otion to [t]ransfer [v]enue; analyz[e] defenses; [and] [o]riginal [a]nswer." Further, on March 22, 2018, the first attorney billed 0.6 hours to revise the motion to transfer venue and original answer. *See El Apple*, 370 S.W.3d at 762 ("Charges for duplicative, excessive, or inadequately documented work should be excluded."). Twelve entries contained redactions. *See id.*

Further, although Berry identified only 1.5 hours of internal communications in his summary, the invoice reflects conference between attorneys beyond the 1.5 hours identified. For example, an entry on June 24, 2018, begins with "[c]onfer with [Attorney II] regarding [m]otion to [d]ismiss [h]earing" among other activities such as reviewing responses and exhibits, and drafting revising, and editing objections to Bay's exhibits for

13

a total of 7.6 hours. Again, on July 24 and August 9, "[c]onfer with [Attorney II]" is listed among multiple activities for a combined total of 12.5 hours. Because Berry's attorney billed multiple activities together, or "block billed," it is unclear how much time was spent conferring, reviewing materials, or drafting and editing motions. *See id.*

Reviewing the billing records also reveals that a combined six entries account for 23.5 hours for "various preparations," reviewing authorities, and editing objections to Bay's evidence for the hearings on Berry's motions to transfer venue and to dismiss. This does not include the 26.7 hours over six entries spent drafting, revising, and finalizing the twelve-page motion to dismiss. Finally, after the hearing on Berry's motion to dismiss wherein the trial court notified the parties that the motion would be denied because it could not rule within thirty days, his attorneys drafted and edited three advisory notices to the court and two objections on the trial court's failure to rule on pending motions and objections, which account for a total of 12.6 hours.[6] This is excluding another entry containing 9.2 hours for drafting the third advisory notice, second motion to rule, reviewing Bay's amended response to Berry's motion to dismiss, and drafting a motion to strike and objections to Bay's amended response.

The trial court could have determined that the times and rates reported by Berry's counsel was excessive, inadequately documented, or duplicative. *See id.*; *Gray*, 511 S.W.3d at 653. Having reviewed the motion, the reporter's record from the hearing, and the billing records provided, we are unable to conclude that the trial court abused its

---

[6] Due to block billing, some of the entries for drafting and revising the notices and objections overlap with the previously discussed internal communications.

discretion when it ordered $10,000 for trial fees despite Berry's request for $27,816.50. *See Sullivan*, 488 S.W.3d at 299; *see also Urquhart v. Calkins*, No. 01-17-00256-CV, 2018 WL 3352919, at *2–3 (Tex. App.—Houston [1st Dist.] July 10, 2018, pet. denied) (mem. op.) (upholding a reduction from $128,065 to $25,000). Berry's complaint regarding the trial court's award for the pre-appeal stage is overruled.

### 2. Interlocutory Appeal Stage

For the interlocutory appeal stage, Berry's counsel allocated their time as follows: 0.6 hours to research and analysis, 65 hours to draft and edit appellant's brief, 40.7 hours to draft and edit appellant's reply brief, 0.4 hours for miscellaneous communications, 0.7 hours for internal communications, and 9.6 hours for "miscellaneous activities" for a total of 117 hours and $34,457. Unlike the pre-appeal stage, the record for the appellate billing contains less block billing and fewer redactions.

However, similar to his argument on trial fees, Berry argues the trial court should have found the requested fees for the interlocutory appeal to be presumptively reasonable based on the uncontroverted attorney's declaration. Berry again argues the trial court could have only utilized two mathematical possibilities to arrive at the $5,000 fee award: (1) the trial court found the 117 hours as reasonable time but at a reasonable rate of $42.74 per hour, or (2) the trial court found $294.50 per hour to be a reasonable rate and seventeen hours was a reasonable time. Similar to the pre-appeal stage, these are not the only mathematical possibilities to equal $5,000.

Bay argues that because our opinion in *Berry I* only reviewed Berry's argument regarding limitations defense, he should not be entitled to recover fees related to the

15

remainder of his brief because it would be unreasonable. While a trial court has discretion to determine whether the time spent was reasonable, concluding that a party may not recover attorneys' fees for arguments other than the winning argument would be wholly impractical when appellate courts only decide the necessary matters. *See* TEX. R. APP. P. 47.4 (directing appellate courts to "write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it"). This is not to say that successful parties must be reimbursed for every argument made; rather, the trial court maintains discretion to determine the reasonable time spent and a reasonable rate. *See Sullivan*, 488 S.W.3d at 299. That discretion, though, should not be exercised arbitrarily, unreasonably, or without reference to guiding principles. *See In re A.L.M.-F.*, 593 S.W.3d at 282.

Bay also argues that because we decided the interlocutory appeal solely on limitations, that Berry's "'relative success' was low[.]" Berry, in contrast, argues that he "achieved complete success" because "[he] obtained a full dismissal with prejudice of Bay's lawsuit." We agree with Berry that he did not have "limited success" in having Bay's claims against him dismissed; he achieved complete success, albeit on only one of his issues presented. *See Hawxhurst v. Austin's Boat Tours*, 550 S.W.3d 220, 233 n.5 (Tex. App.—Austin 2018, no pet.) (noting that a trial court may consider "the relative success of the parties" when determining reasonable attorney's fees (citing *In re A.B.P.*, 291 S.W.3d 91, 98 (Tex. App.—Dallas 2009, no pet.))).

Finally, Bay argues that Berry was required to segregate between recoverable and unrecoverable fees as his arguments were presented under different subsections.

16

*Compare* Tᴇx. Cɪᴠ. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 27.005(b)(1) (requiring dismissal for actions based on a party's exercise of constitutional rights) *with id.* § 27.005(d) (requiring dismissal if the moving party establishes an affirmative defense entitling it to judgment as a matter of law). Bay cites no authority requiring segregation of fees for arguments under the two subsections, and we find none. Indeed, § 27.009(a)(1) requires attorneys' fees for the "dismissal of a legal action under [Chapter 27]." *See id.* § 27.009(a)(1).

When reviewing appellate fees, we may consider the entire record and draw on our knowledge and experience as appellate justices. *See Keith*, 221 S.W.3d at 169; *see also Urquhart*, 2018 WL 3352919, at *4. In doing so, we note that Berry's initial appellate brief contained approximately thirty-six pages of background information, legal analysis, and argument, analyzing approximately forty authorities. Bay's responsive brief contained approximately forty pages, analyzing thirty-five authorities. Finally, Berry's reply brief consisted of approximately twenty-two pages of argument, analyzing additional authorities.

Although the billing records do not reveal how much time Berry's counsel spent on each particular argument of the brief, they do mostly delineate between the time spent drafting the brief and other time such as editing the brief or internal communication. While some block billing occurred, it was otherwise free of duplicate entries, excessive redactions, and was adequately documented. *See El Apple*, 370 S.W.3d at 762. Additionally, the TCPA is evolving with frequent case law updates. *See Rohrmoos Venture*, 578 S.W.3d at 500 (considering the novelty and difficulty of the issues involved and the skill required to perform the legal services properly). Considering the entire

17

record, including the briefs filed by the parties and the billing records, we conclude the appellate fees awarded by the trial court are arbitrary and bear no relationship to the services required. *See In re A.L.M.-F.*, 593 S.W.3d at 282; *Keith*, 221 S.W.3d at 169; *see also Urquhart*, 2018 WL 3352919, at *4 (concluding the trial court abused its discretion in awarding $8,000 for incurred appellate fees after reviewing the prior appellate record). We sustain Berry's argument as to the incurred appellate attorneys' fees awarded.

### 3. Post-Appeal Stage

For the post-appeal stage, Berry's counsel identified 42.9 hours of services performed for a total of $12,339.[7] The trial court awarded Berry $2,000. Berry's counsel did not provide a breakdown between internal communications, research, or writing as before but did include a description of each activity. The billing records were limited primarily to drafting and revising the motion to enter dismissal with prejudice, consistent with our opinion in *Berry I*, and for attorneys' fees, costs, expenses, and sanctions under the TCPA. The motion was approximately twenty pages long with five exhibits, some including additional attachments.[8]

In his motion, Berry reiterated the procedural and factual background of the case, including excerpts from our memorandum opinion. The primary focus of Berry's motion was his request for attorneys' fees, expenses, court costs, and sanctions. Although the

---

[7] Berry's counsel estimated they would spend an additional fifteen hours analyzing and responding to Bay's response to their motion to dismiss and fee request, as well as preparing for and attending the hearing on the motion. His counsel stated that would result in an additional $5,100 in fees.

[8] In his brief, Berry contends he "drafted, prepared, and filed a 127-page [m]otion." However, that page number is inclusive of the exhibits which added over one-hundred pages to the motion, many of which were previously drafted by either party or this Court.

18

motion did contain relevant caselaw and statutory analysis and application, the motion by and large incorporated the attorney's declaration and attached exhibits into the body of the motion. Berry's counsel identified up to 27.4 hours drafting the motion and declaration and another 10.4 hours editing or revising the motion, 1.8 hours preparing exhibits, and 3.3 hours preparing the billing records. The post-appeal billing records contain minimal block billing or redactions.

Finally, a substantial portion of the motion was dedicated to his request for sanctions. Berry outlined relevant caselaw regarding the factors used in determining an appropriate sanction, arguing the application of those factors to the extensive and litigious history between Berry and Bay. *See Landry's*, 556 S.W.3d at 71–72 (setting out factors used to determine whether a sanction amount is appropriate).

Berry again argues the trial court could only have based the fee on only two possible equations: (1) it accepted his 57.9 hours as reasonable and concluded that $34.54 constitutes a reasonable hourly rate, or (2) it accepted the blended hourly rate of $301.19 as reasonable but only found 6.6 hours of work as reasonable.[9] Berry argues that 6.6 hours of labor is "inherently unreasonable" but offers no authority in support of this argument. Again, these are not the only mathematical equations to equal $2,000.

Although Berry's counsel identified a blended rate of $340 per hour for his estimated additional fifteen hours, it is unclear how that rate was calculated when the summary of hourly rates has a maximum rate of $325 per hour for Berry's counsel, with

---

[9] Berry's calculations appear to be based on the fees and time spent as evidenced in its billing record, in addition to fifteen hours and $5,100 he estimated would be necessary to complete the post-appeal stage.

other rates under $300 per hour. As noted by Berry, the blended rate for work on the post-appeal stage was $301.19 billed, not $340. Thus, the trial court could have disregarded this contradictory amount or determined it to be excessive. *See Sullivan*, 488 S.W.3d at 299.

Applying the *Arthur Andersen* factors, the trial court could have determined that, as to the motion to dismiss and for fees and sanctions, the amount of time spent was neither reasonable nor necessary for the limited scope considered. *See Rohrmoos Venture*, 578 S.W.3d at 500 (citing *Arthur Andersen*, 945 S.W.2d at 818); *Gray*, 511 S.W.3d at 653. The issues for post-appeal consideration were limited to this Court's mandate to dismiss, and the statutorily required award of attorneys' fees, court costs, and sanctions. *See Rohrmoos Venture*, 578 S.W.3d at 500; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a).

It is not the position of the appellate court to substitute its own judgment for that of the trial court's but instead to determine whether the trial court abused the discretion assigned to it. *See Garrod Invs.*, 139 S.W.3d at 767. Having reviewed the entire record, we cannot say the trial court acted arbitrarily, unreasonably, or without reference to guiding principles in its award of post-appeal attorneys' fees. *In re A.L.M.-F.*, 593 S.W.3d at 282. Berry's complaint as to the amount of post-appeal attorneys' fees is overruled.

### 4.    Conditional Appellate Fees

Finally, Berry argues the trial court abused its discretion in its award of conditional appellate fees. Berry requested conditional appellate attorneys' fees as follows: (1) $20,400 for an appeal to this Court without oral argument; (2) an additional $10,200 if

oral argument were granted; (3) $23,800 through petition for review before the Texas Supreme Court; (4) $27,200 if the Texas Supreme Court requests briefing on the merits; and (5) $13,600 if the Texas Supreme Court grants oral argument. If appealed, Berry's counsel indicated they would "charge a blended hourly rate of $340[,]" stating that the "rates are reasonable considering the difficulties and complexities in the nature of this case and the experience, reputation, and ability of the lawyers involved." Respective to his request for conditional appellate attorneys' fees, Berry's counsel estimated that the work would require (1) sixty hours for briefing before this Court; (2) thirty hours for oral argument before this Court; (3) seventy hours for petition for review before the Texas Supreme Court; (4) eighty hours for briefing on the merits before the Texas Supreme Court; and (5) forty hours if the Texas Supreme Court grants oral argument.

The trial court awarded conditional appellate attorneys' fees in the amount of: (1) $7,500 for an appeal to this court without oral argument; (2) an additional $1,500 for oral argument; (3) $3,500 for a petition for review before the Texas Supreme Court; (4) an additional $3,500 for briefing on the merits before the Texas Supreme Court; and (5) an additional $1,500 for oral argument.

Bay argues that the matter of conditional appellate fees is moot and thus not properly before this Court. *See City of Dallas v. Woodfield*, 305 S.W.3d 412, 416 (Tex. App.—Dallas 2010, no pet.) (holding that mootness implicates subject matter jurisdiction and that "[a]n appellate court is prohibited from deciding a moot controversy"). In particular, Bay points out that the conditional appellate fees only applied if *Bay* appealed the order of dismissal and for fees, and that it has not done so and the time to do so has

21

passed. Berry, in turn, argues that the matter remains a live controversy because Bay could still appeal, depending on this Court's actions. We agree with Berry. Because we are remanding the case for reconsideration on at least actual appellate attorneys' fees, the matter remains live. *See Camarena v. Tex. Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (holding a case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam))). We now consider whether the trial court abused its discretion in its award of conditional appellate fees.

Similar to the additional estimated hours during the post-appeal stage, Berry's counsel identified a blended rate of $340 per hour but did not explain how this rate was calculated in light of the previous rates. Although Berry's counsel indicated the work would include various tasks associated with appellate work, there is no indication as to how they arrived at the estimated hours. Rather, the motion and declaration merely recite affirmations that the amount of time and rates required are reasonable and necessary considering various *Arthur Andersen* factors, without providing context or substance. *See Arthur Andersen*, 945 S.W.2d at 818. Otherwise, the motion and declaration provide little facts for the trial court to support Berry's requested conditional appellate attorneys' fees. *See Rohrmoos Venture*, 578 S.W.3d at 489 (noting the movant for attorneys' fees bears the burden to prove the requested fees are reasonable and necessary).

Unlike *Berry I*, the issues available for appeal at this juncture are limited to the award of attorneys' fees and sanctions. *See id*. at 493–94 (considering the time and labor required, the novelty and difficulty of the questions involved, and the skill required to

22

perform the legal services properly). Although Berry's counsel opined as to the reasonable hours and rate, the trial court could have found both to be excessive and extreme. *See Sullivan*, 488 S.W.3d at 299; *Gray*, 511 S.W.3d at 653. Based on the record provided, we cannot say the trial court abused its discretion in its award of conditional appellate fees. *See Sullivan*, 488 S.W.3d at 299; *Garrod Invs.*, 139 S.W.3d at 767. Berry's issue as to conditional appellate attorneys' fees is overruled.

**B.    Sanctions**

By his second issue, Berry argues the trial court abused its discretion by ignoring the evidence he presented in supporting a sanction of $79,712.50 and ordering a sanction of $2,000 instead.

Berry requested the trial court award a sanction equal to the amount of his requested attorneys' fees. Relying on the factors outlined in *Landry's*, Berry argues the evidence he provided to the trial court supported the requested sanction. *See Landry's*, 566 S.W.3d at 71–72. The non-exclusive factors identified in *Landry's* are the same factors considered by the trial court when awarding sanctions under Chapter 10 of the Texas Civil Practice and Remedies Code. *See id*. Those factors are:

a.    the good faith or bad faith of the offender;

b.    the degree of willfulness, vindictiveness, negligence, or frivolousness involved in the offense;

c.    the knowledge, experience, and expertise of the offender;

d.    any prior history of sanctionable conduct on the part of the offender;

e.    the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;

23

f.    the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;

g.    the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;

h.    the risk of chilling the specific type of litigation involved;

i.    the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;

j.    the impact of the sanction on the offended party, including the offended person's need for compensation;

k.    the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;

l.    burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;

[m. excluded by quoted text; and]

n.    the degree to which the offended person's own behavior caused the expenses for which recovery is sought.

*Id.* (quoting *Low v. Henry*, 211 S.W.3d 609, 620 n.5 (Tex. 2007)).

While the factors in *Landry's* may support a sanction higher than $2,000, they do not *mandate* one. Rather, the factors have been generally applied to determine whether a sanction was *too high*. *See id.*; *see also Kinney v. BCG Atty. Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *11–12 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (determining that a sanction of $75,000 in TCPA dismissal was not excessive in light of the same factors). Further, this Court has held that "[t]he only evidentiary consideration mandated by statute is that evidence be brought for the court to determine

24

an amount 'sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.'" *Pisharodi*, 622 S.W.3d at 90 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a)(2)). As such, we decline Berry's invitation to substitute our own judgment for the trial courts' as to the appropriate sanction to deter Bay from bringing similar actions. *See Garrod Invs.*, 139 S.W.3d at 767. Berry's second issue is overruled.

### V.    CONCLUSION

We reverse and remand the trial court's award of incurred attorneys' fees for the appellate stage for further proceedings consistent with this opinion and affirm the remainder of the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
3rd day of March, 2022.